UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI S., <br><br>        Plaintiff, <br><br>        v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br><br>        Defendant. | Case No. 2:20-cv-08628-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On September 21, 2020, plaintiff Lori S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step five; (2) whether the ALJ erred at

step two when she failed to find plaintiff's asthma was a severe impairment; and (3) whether the ALJ erred in considering plaintiff's lumbar spine impairment, both in finding it not severe at step two, and in assessing plaintiff's residual functional capacity ("RFC"). Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-14; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err at step two or five, and also did not err in assessing plaintiff's RFC. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 50 years old on the application date, attended school through the tenth grade. AR at 70-71, 203. Plaintiff has no past relevant work. *Id*. at 64.

On January 8, 2018, plaintiff filed an application for SSI due to Guillain-Barre syndrome, high blood pressure, thyroid problems, depression, acid reflux, asthma, vertigo, and migraines.[1] *Id*. at 71. The application was denied initially and upon reconsideration, after which plaintiff filed a request for hearing. *Id*. at 98-115.

On May 8, 2020, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 31-69. The ALJ also heard testimony from Gail Maron, a vocational expert ("VE"). *Id*. at 64-68. On May 21, 2020, the ALJ denied plaintiff's claim for benefits. *Id*. at 10-21.

---

[1]  Plaintiff had previously been granted SSI benefits in 2010. AR at 44-45, 71. Plaintiff was deemed not disabled in May 2016. *Id*. at 45.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 8, 2018, the application date. *Id*. at 12.

At step two, the ALJ found plaintiff suffered from the severe impairments of Guillain-Barre syndrome, vertigo, bipolar disorder, anxiety, post-traumatic stress disorder, obesity, and a substance abuse disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 13.

The ALJ then assessed plaintiff's RFC,[2] and determined plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(b), with the limitations that plaintiff: could not climb ladders, ropes, and scaffolds; could not have exposure to dangerous work hazards including unprotected heights and exposed moving machinery; was limited to up to detailed, but not complex, work tasks and work not requiring a fast assembly quota pace as defined at the hearing; was limited to occasional work interactions with co-workers, supervisors, and the public; and was limited to work tolerating up to three percent off task behavior during the workday due to momentary symptom distractions. *Id*. at 15-16.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id*. at 20.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cook

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

helper and hand packager. *Id*. at 20-21. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id*. at 21.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Did Not Err at Step Five

Plaintiff contends the ALJ erred at step five because she improperly relied on the testimony of the vocational expert, who identified jobs that exceeded plaintiff's RFC. P. Mem. at 2-8. Specifically, plaintiff argues the ALJ erred when she failed to ask the VE to reconcile the apparent conflicts between the VE testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* Plaintiff alleges that the job of cook helper required "significant interactions with co-workers" and the job of hand packager involved exposure to various hazards, both of which are precluded by plaintiff's RFC. *Id.* at 4-8.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(b)(3).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a

particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[3]

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the conflict."); *see, e.g., Hernandez v. Astrue*, 2011 WL 223595, at *2-*5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the apparent conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict [and] the ALJ provided no explanation for the deviation," the ALJ "therefore committed legal error warranting remand."). For a conflict to be apparent, the VE's testimony must

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

be at odds with the essential, integral, or expected parts of a job. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

      At the hearing, in response to a hypothetical person with plaintiff's RFC, the VE testified that such person could perform the jobs of cook helper (DOT 317.687-010) and hand packager (DOT 920.587-018). AR at 65. The VE further testified the jobs were consistent with the DOT, but portions of the hypothetical – including the limitations concerning fast pace assembly and being off task – were not in the DOT. *Id*. at 67. The VE relied on her education, training, and work experience to determine whether plaintiff could perform the jobs with those limitations. *Id*.

      There was no apparent conflict between the VE's testimony that plaintiff could perform the job of cook helper and the DOT. In her RFC determination, the ALJ limited plaintiff to "only occasional required work interactions with co-workers, supervisors, and the public." *Id*. at 16. The DOT describes the job as requiring a cook helper to "[a]ssist[] workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing" a variety of duties including cleaning and peeling vegetables, stirring soup, weighing ingredients, carrying pans and food, and cleaning work areas. DOT 317.687-010, 1991 WL 672752. Plaintiff contends the fact that a cook helper must assist other workers means he or she must have significant interactions with co-workers. P. Mem. at 4. But plaintiff's argument is based solely on her own interpretation of this DOT provision. To the contrary, the DOT states that the level of interactions required is "not significant," and the description of the tasks do not indicate they require more than occasional interactions with others. *See, e.g., Brown v. Berryhill*, 2018 WL 748150, at *3 n.6 (C.D. Cal. Feb. 7, 2018) (the job of cook helper requires a level of interaction that is "not significant") (citing DOT 317.687-010); *Henley v.*

*Astrue*, 2012 WL 2804852, at *7 (W.D.N.C. May 9, 2012) (the job of cook helper does not require significant interaction with others).

There also was no apparent conflict between the VE's testimony that plaintiff could perform the job of hand packager and the DOT. The ALJ determined plaintiff could "never have exposure to dangerous work hazards including unprotected heights and exposed moving machinery." AR at 15. A hand packager packages materials and products manually, and his or her duties may include: cleaning packaging containers; sorting products; weighing containers; starting, stopping, and regulating speed of conveyor; and nailing, gluing, or closing containers; and recording information such as weight, time, and date packaged. DOT 920.587-018, 1991 WL 687916. Plaintiff contends the operation of a conveyor and nailing containers are hazards, and therefore the VE's testimony conflicts with the DOT. P. Mem. at 6. But the DOT defines hazards as "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-6p. Although the job of hand packager may entail starting, stopping, and regulating the speed of a conveyor, the DOT expressly states that exposure to moving mechanical parts is "not present" in the hand packager position. *See* DOT 920.587-018, 1991 WL 687916. Likewise, with respect to nailing containers, the DOT does not define the use of simple tools such as a hammer as a hazard. *See, e.g., Contreras v. Berryhill*, 2018 WL 2448120, at *7 (C.D. Cal. May 30, 2018) (tools such as scissors and a knife do not fall within the Commissioner's definition of hazards); *Peterson v. Astrue*, 2011 WL 1131495, at *4-*5 (D. Or. Mar. 2, 2011) (tools such as hammers are not hazards under the DOT); *Phonn v. Astrue*, 2010 WL 2850768, at *3 (C.D. Cal. Jul. 20, 2010) ("A knife is a tool; it is not a hazardous machine."). As such, there was no apparent conflict between the VE's testimony and the DOT. *See, e.g.,*

*Hernandez v. Colvin*, 2016 WL 805252, at *8 (C.D. Cal. Feb. 29, 2016) (there was no conflict between the VE testimony and DOT because the DOT states that the hazard of moving mechanical parts is not present); *Anderson v. Colvin*, 2015 WL 1005407, at *5 (C.D. Cal. Mar. 6, 2015) (agreeing that based on the DOT description, the hand packager occupation does not involve work around hazardous machinery); *Bryant v. Colvin*, 2014 WL 1831016, at *4 (C.D. Cal. May 7, 2014) ("[T]he DOT indicates that hand-packager jobs do not involve exposure to dangerous machinery.").

Accordingly, the ALJ did not err at step five. Substantial evidence supported the ALJ's step five findings.

**B.    The ALJ Did Not Err in Considering Plaintiff's Asthma and Lumbar Spine Impairment**

Plaintiff argues the ALJ erred at step two when she failed to recognize her asthma and her lumbar spine impairment as severe impairments. P. Mem. at 8-14. Plaintiff also contends the ALJ failed to consider her back pain in her RFC determination. *Id*. at 14.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Here, the ALJ found plaintiff suffered from the severe impairments of Guillain-Barre syndrome, vertigo, bipolar disorder, anxiety, post-traumatic stress disorder, obesity, and a substance abuse disorder. AR at 12. In reaching this finding, the ALJ specifically discussed plaintiff's asthma and lumbar spine impairment and found them to be non-severe. *Id*. at 12-13. With regard to asthma, the ALJ noted plaintiff demonstrated faint rhonchi in her lower field and was diagnosed with mild, persistent asthma in January 2017, but was able to manage her symptoms with inhaler medications. *Id*. at 13. The ALJ also noted

plaintiff was a long-term smoker, which suggested that her asthma was not as limiting as she alleged. *Id*. As for plaintiff's lumbar spine impairment, the ALJ found that to be non-severe because plaintiff only had mild objective findings and conservative treatment history. *Id*.

### 1. **Asthma**

The ALJ did not err when she found plaintiff's asthma to be non-severe at step two. Plaintiff was diagnosed with asthma in her childhood. AR at 290. But the mere diagnosis of an impairment does not establish that it was severe. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Plaintiff's medical records indicate that other than faint rhonchi in January and May 2017 and two claims of shortness of breath, plaintiff was able to manage her asthma with inhaler medications. *See* AR at 262, 270, 498, 509. At her examinations prior to and during the relevant period, plaintiff consistently exhibited no wheezing, good air movement, normal breath, and lungs that were clear to auscultation. *See, e.g.*, *id*. at 301, 304, 486, 495, 526, 553, 756, 850. An October 2018 chest x-ray showed no abnormalities. *Id*. at 861. Indeed, throughout the relevant period, plaintiff's physicians opined plaintiff's asthma was mild and without complication. *See, e.g.*, *id*. at 497, 501, 507, 631.

Even if the ALJ's conclusion that plaintiff's smoking aggravates her asthma was in error, there was no harm. The medical records reveal scant complaints about symptoms and indicate that plaintiff's asthma was well-managed with medications. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling

for purposes of determining eligibility for SSI benefits."). Indeed, even plaintiff's reported asthma attack during the hearing was so mild that plaintiff apparently just needed to pause for a moment. *See* AR at 37.

Thus, the ALJ did not err at step two when she found plaintiff's asthma was not a severe impairment. Substantial evidence supports the non-severity finding.

### 2. **Lumbar Spine Impairment**

Similarly, the ALJ did not err at step two when she found plaintiff's lumbar spine impairment to be non-severe. As the ALJ recognized, there were some objective findings of a lumbar spine impairment, but they were sparse and the treatment was conservative. AR at 13. A June 2016 x-ray showed trace right convex scoliosis at L2-3, plaintiff alleged gait abnormality in September 2016, and plaintiff had lower back pain while performing the single leg raise in November 2017. *Id.* at 513, 563, 735. Plaintiff's few complaints of back pain were treated with gabapentin and ibuprofen. *Id*. at 271-72. During the relevant period, plaintiff only complained of back pain on two occasions, and physicians treated it with ibuprofen. *Id*. at 494, 633-35. Indeed, records from the relevant period reflect no tenderness, normal strength, and normal range of motion even on the two occasions plaintiff complained of pain. *See id.* at 484, 495, 637, 850.

Plaintiff correctly contends that regardless of the severity finding, the ALJ was still required to address plaintiff's lumbar spine impairment in the RFC. P. Mem. at 4; *see Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (in an RFC assessment, the ALJ should consider all limitations imposed by both severe and non-severe impairments). Here, the ALJ addressed plaintiff's complaints, physical limitations, and obesity in the decision, including the only symptom plaintiff alleged relating to her back, which was an inability to sit too long due to her back seizing up. *See* AR at 16-17, 61. Thus, even if the ALJ erred in failing to find plaintiff's lumbar spine impairment severe, the error was harmless. *Lewis v.*

*Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the ALJ discussed it in the RFC determination).

Accordingly, the ALJ's step two findings were supported by substantial evidence, and any error was harmless since the ALJ considered plaintiff's non-severe impairments in formulating her RFC.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered affirming the decision of the Commissioner denying benefits and dismissing this action with prejudice.

DATED: September 28, 2022

SHERI PYM
United States Magistrate Judge